UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STEVEN MATTHEWS, Individually and on behalf of other employees similarly situated | § § § § | No. 6:15-cv-00448-MHS |
| Plaintiff(s) | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| PRIORITY ENERGY SERVICES, LLC, et al. | § § | |
| Defendant. | § § § § § | FLSA COLLECTIVE ACTION |

**DEFENDANTS' MOTION TO ENFORCE ARBITRATION AGREEMENTS AS
WRITTEN OR TO VACATE ORDER COMPELLING ARBITRATION**

TO THE HONORABLE COURT:

Defendants Priority Well Testing, LLC and Priority Coiled Tubing, LLC (collectively "Priority") file this Motion seeking to enforce pertinent terms in the Parties' contractual agreements to arbitrate, as written; or to vacate the Court's prior Order compelling arbitration, because the arbitration body has refused to adhere to the plain language of the Parties' agreements[1]:

## I.    SUMMARY OF ARGUMENT

Priority and certain Plaintiffs (collectively, the "Parties") consented to arbitration on the express condition the Parties "*shall* split all costs . . ." of arbitration.  The pertinent agreements to

---

[1] Defendant Priority Energy Services ("Priority Energy") is a party to this litigation, but not yet a formal party to the arbitration proceedings, because no Plaintiff discussed herein was a Priority Energy employee.  To the extent additional Plaintiffs who worked for, and executed agreements to arbitrate with Priority Energy, seek to compel arbitration—Priority Energy joins this Motion.

arbitrate even articulate a mechanism whereby this mandatory cost-sharing arrangement can be adjusted on a case-by-case basis, if warranted, to "reapportion" costs at the conclusion of arbitration—"in the award."

The agreements consequentially are not silent regarding the mechanism agreed upon by the Parties to initially apportion, and potentially reapportion costs.  The Plaintiffs who invoked arbitration have waived any challenge they previously might have asserted to these provisions. The arbitrating body nevertheless unilaterally disregarded the terms upon which the Parties conditioned their willingness to arbitrate, by disproportionately allocating arbitration costs to Priority.

This contravenes the plain language of the Parties' agreements, voids the enforceability of the arbitration provisions contained therein, and shifts a disproportionate burden to Priority to bear costs the Parties mutually agreed to share.  Priority therefore moves the Court to compel the arbitrating body to enforce the Parties' agreements to arbitrate as written, or simply vacate its Order compelling arbitration and reinstate Plaintiffs' litigation.

## II.   PROCEDURAL HISTORY AND BACKGROUND INFORMATION

### A.  District Court Proceedings

On July 14, 2016, Priority filed a Motion to Compel Arbitration and Stay Proceedings seeking to remove certain Plaintiffs' claims to arbitration, pursuant to the terms of "Employment Agreements" signed by six (6) Plaintiffs—all of which contain arbitration clauses.  (Dkt. No. 54). Those Plaintiffs are Nathan Arrambide ("Arrambide"), Justin Dryer ("Dryer"), Omar Hyman

("Hyman"), Daniel Soto ("Soto"), Michael Young ("Young"), and Nicholas Wright ("Wright"),

(collectively the "Arbitration Claimants").  *See* (Dkt. Nos. 54-1, Pages 3 of 25 – 25 of 25).[2]

Each of their Employment Agreements contain the following clause:

> **Arbitration and Waiver of Class Claims.**  I agree that any claims or disputes of any sort whether arising in the past, present or future between the Company and me . . . arising in any way from this Agreement or my employment with the Company shall be resolved exclusively through binding arbitration under the Federal Arbitration Act and the pertinent American Arbitration Association Rules in effect at that time. . . .  The parties shall *split all costs of arbitration*, subject to the ability of the arbitrator to *reapportion* costs of arbitration, attorneys' fees and expert witness fees *in the award*.

*Id.* (emphasis added).  Each Arbitration Clamant assented his Employment Agreement and its

terms shall be governed by Texas law.  *Id.*

On July 28, 2016, the Arbitration Claimants filed an Agreement to Arbitrate, and Motion

to Dismiss, Certain Plaintiffs (the "Agreement to Arbitrate").  (Dkt. No.  68).  In the Agreement

to Arbitrate, they conceded they were bound by the arbitration clauses and forwent any objection

to the Parties' mutual assent to terms such as the covenant to "split all costs of arbitration."  *See*

*id.*  On December 2, 2016, the Magistrate Judge therefore recommended the Court compel

arbitration with respect to the Arbitration Claimants, because the claims were "encompassed by

an arbitration agreement *and there are no defenses against arbitration . . . .*" (Dkt. No. 87, Page 3

of 13, 4 of 13) (emphasis added).

On January 3, 2017, this Court adopted the Magistrate's Report and Recommendation.

(Dkt. No. 95).  To this day, the Arbitration Claimants have failed to present argument or evidence

---

[2] An additional thirty-four plaintiffs involved in this action also signed Employment Agreements with arbitration clauses, and apparently have filed requests to arbitrate.

the Parties' agreements to "split" arbitration costs are unenforceable.  The governing arbitration body nonetheless is refusing to adhere to the Parties' agreements to do precisely that.

### B.  AAA Proceedings

The American Arbitration Association ("AAA") has declined to split costs of arbitration between the Parties.  On July 28, 2016, the AAA informed the Parties the Arbitration Claimants would be required to pay only a $200.00 filing fee to proceed with the arbitration, but Priority was required to pay a disproportionate $1,500.00 fee as it's portion of the arbitration filing costs.  *See July 28, 2016 Letters from the AAA to Priority regarding Arbitration Claimants*, attached hereto as ***Exhibit A(1) – (6)***.  The AAA justified this disproportionate allocation as follows:

> Upon review of the documents submitted in the above-referenced matter, the AAA has determined that this dispute arose from an employer-promulgated plan, and will be administered in accordance with the *Employment Due Process Protocol* of the AAA Employment Arbitration Rules.

*Id.* (emphasis added).

Consistent with this unilateral determination by the AAA, between January 6, 2017 and February 14, 2017, the AAA billed Priority for amounts in addition to the $1,500 filing fee, bringing the total amounts to be paid by Priority to $16,550 for the Arrambide arbitration; $17,100 for the Hyman arbitration; $19,000 for the Soto arbitration; and $19,000 for the Young arbitration.  *See Emails from the AAA to Priority regarding balances allegedly owed by Priority for Arrambide, Hyman, Soto, and Young*, attached hereto as ***Exhibit B***.[3]

This is not what the Parties' assented to in the Employment Agreements.  Priority therefore informed counsel for the Arbitration Claimants ("Opposing Counsel") that in light of the

---

[3] The AAA has not yet informed Priority of the costs for the Dryer or Wright arbitrations.

AAA's apparent unwillingness to enforce the terms of the Agreements as written, it would allow the Arbitration Claimants to rejoin this litigation, because this matter cannot (under the AAA's present mandate) proceed in a manner consistent with the conditions contractually agreed upon by the Parties.

Opposing Counsel in turn has advised the Arbitration Claimants seek to proceed with the arbitration without complying with the Parties' contractual commitment to split costs—and Opposing Counsel further has advised it will invoke arbitration for thirty-four additional Plaintiffs.  On Thursday, March 9, 2017, Priority sent notice, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), that Priority would seek an order from this Court to enforce the terms of the arbitration clauses if the Arbitration Claimants and Opposing Counsel persisted with their refusal to adhere to the terms agreed upon by the Parties.  *See Notice of Intent to File Petition with the U.S. District Court Seeking to Enforce the Terms of the Arbitration Agreements sent to Arbitration Claimants*, attached hereto as ***Exhibit C(1) – (6)***.  In the notice, Priority reiterated it would agree to allow the Arbitration Claimants to rejoin the current litigation if they perceive shared costs of arbitration are cost prohibitive—notwithstanding the express terms of the arbitration clauses.  The Arbitration Claimants have declined the offer.

Pursuant to Section 4 of the FAA, Priority now files the current Motion either to enforce the Parties' agreements to arbitrate as written or to vacate the order compelling arbitration such that this matter may proceed as conventional litigation before this Court.  In either regard, the Parties' agreements to arbitrate are not consistent with the arbitration procedures the AAA unilaterally is attempting to impose; thus, the arbitrations cannot proceed under those procedures.

### III.     ARGUMENT & AUTHORITIES

**A. The AAA's Default Rules Regarding Cost Allocation cannot Negate the Parties' Express Contractual Provisions regarding Costs**

The AAA's communications to the Parties have identified the AAA's "Due Process Protocol" as the basis for its unilateral decision to shift the balance of costs to Priority.  *See* **Exhibit B**.  The Protocol does not address, however, the manner in which costs may be reallocated between arbitrating parties.  *See Employment Due Process Protocol,* attached hereto as **Exhibit D**.

The AAA's default rules regarding cost allocation instead are included within a "Fee Schedule" that became effective in July 2016.  *See Employment Arbitration Rules and Mediation Procedures, Fee Schedule*, attached hereto as **Exhibit E**.  Although it may be appropriate for the AAA to utilize the terms of the Fee Schedule to allocate costs between parties when an arbitration agreement or clause is *silent* regarding costs; as a matter of law, the AAA is precluded from utilizing the Fee Schedule to allocate costs in a manner that *contravenes* parties' contractual intent regarding costs.

Section 4 of the FAA provides a party entitled to arbitrate a dispute "may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed *in the manner provided for in such agreement*."  9 U.S.C. § 4 (emphasis added).  Section 4 allows a district court to order arbitration only "in accordance with the *terms* of the agreement . . . ."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (emphasis added).

Indeed, the "FAA . . . places arbitration agreements on an equal footing with other contracts, . . . and *requires* courts to enforce them *according to their terms . . . .*" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citation omitted) (emphasis added).   Arbitration consequentially is solely a matter of contract, and standard rules of contractual construction dictate the manner in which an arbitration provision must be construed and enforced.

Those rules include the following cannon:   "in Texas, a specific contractual provision prevails over a general provision." *In re Davis Offshore, L.P.*, 644 F.3d 259, 266 (5th Cir. 2011). In context of agreements to arbitrate, this cannon operates such that a covenant to "split" arbitration costs is a "specific" provision, which prevails over incorporation by reference of the AAA's generic rules that contain default cost allocation terms.

The Court of Appeals of New York persuasively addressed precisely this issue in *Brady v Williams Capital Group, L.P.*, by applying legal principles, which apply with equal force in this matter.   14 N.Y.3d 459 (N.Y. App. 2010).   In *Brady*, the "[employer]. . . promulgated an employee manual that all of its employees, including petitioner, were required to sign and abide by as a condition of continued employment." *Id*. at 462.   The parties' arbitration agreement contained a provision "to equally share the fees and costs of the arbitrator[,]" and further provided the "Company and I agree that, except as provided in this Agreement, any arbitration shall be in accordance with the then-current Model Employment Arbitration Procedures *of the [AAA] . . . .*" *Id*. at 462 – 63 (emphasis added).

The petitioner filed a demand for arbitration with the AAA to resolve an employment dispute with the employer; and at that time, the AAA's default rules "required employers to pay *all* arbitration expenses and the arbitrator's compensation (referred to as the AAA's 'employer-

7

pays' rule)." 14 N.Y.3d at 463.[4]  As a result, the "AAA, in accordance with its 'employer-pays' rule, sent [the employer] . . . an invoice/statement for $42,300, which represented the entire advance payment for the arbitrator's compensation." *Id*. at 464.

The employer objected, because the allocation of fees demanded by the AAA contravened the plain language of the parties' agreement to share costs. *Id*.  The petitioner nonetheless refused to adhere to the agreement, and the AAA sided with the petitioner by attempting to collect the entire balance from the employer.  *Id*.  The employer persisted that the arbitration procedures proposed by the AAA contravened the parties' contractual agreement.  *Id*.

The AAA responded by cancelling the arbitration, and the petitioner moved for relief from the court.  *Id*.  A New York trial court and an intermediate appellate court *rejected* the petitioner's contentions, because the AAA's default rules could *not* supersede the express provision in the parties' contract.  *Id*.  Those courts nonetheless reached different conclusions regarding the appropriate means to remedy the issue.  *Id*.

The Court of Appeals of New York thereafter reviewed the matter and in so doing held as follows:

> At the outset *we agree with the lower courts* that the terms of the parties' Arbitration Agreement, *rather than the AAA rules*, controlled.  In addition, we note (1) "arbitration is a creature of contract, and it has long been the policy of this State to interfere *as little as possible* with the freedom of consenting parties in structuring their arbitration relationship" . . . and (2) "[t]he court's role is limited to interpretation and enforcement of the terms *agreed to by the parties*" . . . .

*Id*. at 465 (emphasis added).

---

[4] The AAA's default Rules since had been modified to require an employer to pay the majority, though not all, arbitration costs.  *See* **Exhibit E** (Fee Schedule).

8

It further is noteworthy all three of the New York courts held the contractual terms controlled over the AAA's default rules, notwithstanding the AAA purported to dictate a contrary result in section 1 of its "National Rules for the Resolution of Employment Disputes":  "If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules."  14 N.Y.3d at 463 – 64 (quoting the "National Rules").   Not even that provision could usurp the mandates of the FAA and applicable state law, which in New York (just as much as in Texas) mandate arbitration can be compelled *only* to the extent the arbitration comports with the express agreement of the parties regarding terms and scope.

The arbitration clause in Priority's Employment Agreement must be construed and enforced in the same manner as the materially identical provisions addressed in *Brady*.   Either the arbitration must proceed in accordance with the contractual terms, or as discussed below, the Arbitration Claimants were obligated (though they failed) to carry their burden to prove some legal grounds *to this Court* to be relieved of the terms of the agreement.   But in no event can the AAA rewrite the Parties' agreement to force participation in arbitration under terms that contradict those agreed upon by the Parties.

**B.  The AAA's Rules do not Prohibit the Parties' Contractual Allocation of Costs**

Although FAA and state law principles would preclude the FAA's attempt to usurp contractual terms agreed upon by parties, it is unlikely the AAA Rules in any event intend to do so with respect to costs.   Page 4 of the "Due Process Protocol," in general mandates:   "The arbitrator should be bound by applicable agreements . . . ."  *See **Exhibit D***.   The Protocol further

emphasizes arbitrator impartiality is assured "by the parties *sharing* the fees and expenses of the . . . arbitrator." *See Exhibit D*, p. 4 (emphasis added).

The Protocol then strongly suggests the AAA can allocate fees in an alternative manner *only* if an arbitration agreement fails to address the issue: "In cases where the economic condition of a party does not permit equal sharing, the parties should make mutually acceptable arrangements to achieve that goal if at all possible. *In the absence of such agreement*, the arbitrator should determine allocation of fees." *Id*. (emphasis added).

This language first makes clear the AAA does not contemplate a categorical prohibition on "equal" sharing of costs. Here, the arbitration clauses in the Employment Agreements proactively resolved how costs should be equally shared in light of "the economic condition of a party . . . ." Nothing in the AAA rules, or case law, prohibits this type of proactive resolution.

Additional guidance is reflected in an AAA document titled "Practical Guide" to "Resolving Employment Disputes." *See Exhibit G* attached hereto. The AAA does not, in the document, purport to reserve to itself any ability to contravene parties' express contractual intent regarding cost allocation.

On page 6 of the document, the AAA states that if an employer's arbitration program does *not* comply with the AAA's Due Process Protocol, or other rules, then the AAA's remedy simply is to reject the dispute: "If the Association determines that a dispute resolution program substantially and materially deviates from at least the minimum of those standards, it will decline to administer cases under that program." That perhaps is an appropriate remedy (and the outcome actually reflected in *Brady*), because it would not require the AAA to re-write a cost-allocation provision in an underlying contract.

10

Additionally, in a "checklist" found on page 11 of the Guide, the AAA provides only that it is prudent for an employer's arbitration program to expressly address cost allocation in an equitable manner, by recommending agreements: "Include a fair method of cost sharing between the employer and employee, which requires the employer to pay a substantial portion of the administrative fees and the arbitrator's fees to ensure affordable access to the system for all employees."

Notwithstanding this recommendation, the very same checklist provision qualifies as follows: "If, however, an employee raises an objection and *asks* to assume a larger portion of the costs of arbitration, an employer is wise to do so in order to protect the process, and avoid the appearance of bias." (emphasis added). Here as well, the AAA makes clear it does not contemplate a categorical prohibition on cost sharing, or negotiation between employer and employee regarding appropriate terms to do so. Priority's arbitration clauses therefore are enforceable as written, because each member of the Claimant's group therein "ask[ed] to assume a larger portion of the costs of arbitration . . . ."

Finally, there simply is no conflict between the terms of the arbitration clause and any internal AAA policy whereby cost might be reallocated under appropriate circumstances. The Arbitration Agreement instead dictates the arbitrator indeed may "reapportion costs of arbitration, attorneys' fees and expert witness fees *in the aw*ard." (emphasis added).

The issue consequentially is not *whether* fees may be reallocated in other than equal shares, but *when* an apportionment of the kind permissibly may occur. The precision with which the Parties addressed that issue is too specific for the AAA to have disregarded—particularly because it does not conflict with the substance of the AAA's default rules.

11

Instead, it reflects the Parties' negotiated position, that cost prohibitions are as much a concern for Priority, as any individual Arbitration Claimant.  By way of real-time illustration, Opposing Counsel has indicated the thirty-four additional Plaintiffs, who signed materially identical Employment Agreements, will pursue arbitration.  It would be untenable to shift to Priority tens-of-thousands of dollars for *each* of those Plaintiffs' individual arbitrations, potentially totaling *more than a half-a-million dollars* in the aggregate—notwithstanding every one of the Plaintiffs agreed they "shall split all costs . . . ."

The plain language of the arbitration clauses was drafted to foreclose this possibility, because not only did the Parties contract regarding allocation of costs in a general sense—they specified the mechanism for reapportionment could occur only at the conclusion of arbitration, in the final "award."  This protects all Parties from disproportionate front-loading of costs on any one Party; thus, the cost-allocation provision, in substance, operates as a Rule 54 prevailing party provision, which is the *de facto* norm in civil disputes.  It should be equally acceptable in arbitration when parties contract to adopt the principles, as is the case here.

The arbitration clauses in Priority's Employment Agreements consequentially create no tension with any powers the AAA theoretically could reserve to itself to reapportion costs as it deems appropriate.  Priority's agreements merely dictate when that apportionment must occur, i.e., "in the award."

### C.  The Arbitration Claimants Failed to Challenge the Validity of the Agreements with the Court, and, as a Result, the Unchallenged Agreements Must Be Enforced According to Their Terms

The terms of the Employment Agreements make emphatically clear no unauthorized attempts to modify them can have legal effect:

"No provision in this Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to *in writing*, specifying such modification, waiver or discharge . . . ."

. . .

"This Agreement sets forth the entire agreement and understanding between the Company and me . . . This Agreement may only be amended upon written consent signed by *both* me and the company."

(Dkt. 54-1, Page 4 of 25, 8 of 25, 12 of 25, 16 of 25, 20 of 25, 24 of 25) (emphasis added).

The Arbitration Claimants nonetheless have refused to arbitrate their claims pursuant to the cost-splitting provision provided in the Agreements—because the AAA has purported to alter the terms.  Only this Court could have authorized an alteration of the kind, *before* it referred this matter to arbitration, but the Arbitration Claimants waived the prospect of any such modification by failing to present any "defense against arbitration . . . ."  *Cf.* (Dkt. 87, Page 3 of 13).

Specially:  "Like other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  *Rent-A-Ctr.*, 561 U.S. at 68 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  An argument that a cost-splitting provision is improper is an argument that the agreement is substantively unconscionable.  *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (noting that a defense of substantive unconscionability encompasses arguments relating to cost-splitting provisions in arbitration agreements); *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 1001 (S.D. Tex. 2011) ("Unconscionability includes . . . substantive unconscionability, which refers to the fairness of the arbitration provision itself.").

The question of unconscionability of an arbitration agreement is a question to be decided by the court, not the arbitrator—and certainly not the AAA.  *See, e.g.*, *Crawford Prof'l Drugs, Inc. v.*

*CVS Caremark Corp.*, 748 F.3d 249, 267 (5th Cir. 2014) (reviewing district court decision relating to unconscionability of arbitration agreement under substantively similar Arizona legal principles); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004) (holding that the district court had authority to determine, on motion to compel arbitration, whether arbitration clause was unconscionable under state law); *Hafer*, 793 F. Supp. 2d 987, 1001 (S.D. Tex. 2011) (deciding whether an arbitration agreement was unconscionable).

If a party challenges the validity of the agreement to arbitrate, the federal court considers the challenge *before* ordering compliance with that agreement. *See Rent-A-Ctr.*, 561 U.S. at 67 – 68. Moreover, there is *no* default presumption an agreement between employer and employee to split costs is inherently unconscionable. The party objecting to the agreement instead has the affirmative burden to propound argument and evidence proving the issue. *See, e.g., Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("[W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, *that party* bears the burden of showing the likelihood of incurring such costs.") (emphasis added); *Williams v. Cigna Fin. Advisors*, 197 F.3d 752, 764 (5th Cir. 1999) (finding that the plaintiff failed to establish an arbitration agreement was invalid despite that he was forced to pay his one-half share of the forum fees, per the terms of the Agreement), *cert. denied*, 529 U.S. 1099 (2000), *overruled on other grounds as recognized by Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009)); *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002) ("[W]ithout more, the mere possibility that a party may have to share in the payment of the arbitrator's fees is not a sufficient reason to invalidate an arbitration agreement.").

Here, the Arbitration Claimants never challenged the validity of the Agreements, or contended the cost-sharing provision could be struck.  As a result, the Court compelled arbitration pursuant to the terms of the Agreements.  The Arbitration Claimants have waived any ability to challenge the agreed upon terms to conduct those arbitrations.[5]

## IV.   **CONCLUSION**

For the reasons set forth herein, Defendants Priority Well Testing, LLC and Priority Coiled Tubing, LLC respectfully request their Motion to Enforce the Arbitration Agreements as Written or Vacate Order Compelling Arbitration be granted.  Defendants further request all other relief to which they may be entitled.

---

[5] The Arbitration Claimants in any event could not have carried their burdens to prove the cost sharing provision is unconscionable.  For instance, many of the Arbitration Claimants made in excess of $100,000.00 in certain years working for Priority, or near that amount.  *Compare 2015 W-2s*, attached hereto as ***Exhibit F***, *with Williams*, 197 F.3d at 765 (considering testimony about the former-employee's six-figure salary before determining that "[t]here is no evidence that the prospect of incurring forum fees hampered or discouraged [the former-employee] in the prosecution of his claim . . . .").

DATED:  March 17, 2017.

Respectfully submitted,

By:    /s/ Daniel D. Pipitone
        **Daniel D. Pipitone**
        Texas Bar No. 16024600
        SD Texas Bar No. 294
        MUNSCH HARDT KOPF & HARR, PC
        700 Milam Street, Suite 2700
        Houston, Texas 77002
        Tel:   (713) 222-4060
        Fax:  (713) 222-5813
        dpipitone@munsch.com

        **ATTORNEY-IN-CHARGE FOR DEFENDANTS**

**OF COUNSEL:**
MUNSCH HART KOPF & HARR, PC
700 Milam Street, Suite 2700
Houston, Texas 77002

**Michael A. Harvey**
Texas Bar No. 24058352
SD Texas Bar No. 917759
Tel: (713) 222-4015
Fax: (713) 222-5835
mharvey@munsch.com
**Brenna L. Hill**
Houston, Texas 77002
Texas Bar No. 24058352
SD Texas Bar No. 917759
Tel: (713) 222-4068
Fax: (713) 222-1475
bhill@munsch.com

16

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h).    The participants in the conference were the undersigned and counsel for Plaintiffs' Rex Burch.    The conference was conducted by phone on March 14, 2017 and proceeded by written communications exchanged by the parties.    In both contexts the Parties could not reach agreement regarding applicable legal principles.    The discussions have conclusively ended in an impasse, and this Motion is opposed.

*/s/ Daniel D. Pipitone*
Daniel D. Pipitone

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by means of ECF this 17th day of March 2017:

**FIBICH, LEEBRON, COPELAND,**
**BRIGGS & JOSEPHSON**
Michael A. Josephson
Andrew W. Dunlap
Lindsay R. Itkin
1150 Bissonnet
Houston, Texas 77005
713-751-0025 – Telephone
713-751-0030 – Facsimile
mjosephson@fibichlaw.com
adunlap@fibichlaw.com
litkin@fibichlaw.com

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**MANN, TINDEL & THOMPSON**
Andy Tindel
112 E Line, Suite 304
Tyler, Texas 75702
903-596-0900 - Telephone
9030596-0909 - Facsimile
atindel@andytindel.com

*/s/ Daniel D. Pipitone*
Daniel D. Pipitone

4850-3943-3285v.1