# Exhibit G



# Resolving Employment Disputes

## A Practical Guide



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/employment**

Amended and Effective July 1, 2006

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

The Use of ADR to Resolve Employment Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Legal Basis of Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

The Fairness Issue: The Due Process Protocol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

AAA's Employment Arbitration Rules and Mediation Procedures . . . . . . . . . . . . . . .6

AAA's Policy on Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Notification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Costs of Employment Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Designing an ADR Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Checklist for Employment Arbitration Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Summary of Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Examples of Employment ADR Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14


Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

I. ADR Clauses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Mediation Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Optional Arbitration of Unresolved Future Disputes. . . . . . . . . . . . . . . . . . . . . . . . . . .15

Agreement to Submit an Existing Dispute to Arbitration . . . . . . . . . . . . . . . . . . . . . . .15

Arbitration Clause for Future Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16


II. Due Process Protocol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

A Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising
Out of the Employment Relationship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Genesis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17


Signatories. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23



# Resolving Employment Disputes
## A Practical Guide

## Introduction

This handbook has been prepared by the American Arbitration Association® (AAA®) to guide employers and employees in the responsible development and use of alternative dispute resolution (ADR) procedures to resolve workplace disputes.

An increasing number of employers and employees are using ADR as a more effective option to traditional litigation to resolve disputes in the non-union workplace. A wide range of dispute prevention and resolution procedures allow employers to offer employees a fair, cost-effective and private forum to resolve workplace disputes.

Due process safeguards are critical to any employment dispute resolution program because they provide a fair and equitable forum for both employee and employer.

## The Use of ADR to Resolve Employment Disputes

Federal and state laws reflecting societal intolerance for certain workplace conduct, and court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations.

Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment or discrimination based on race, color, religion, sex, national origin, age and disability.

As courts and administrative agencies become less attractive to civil litigants, employers and their employees now see ADR as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals and employee handbooks. As the

leading provider of ADR services globally, the American Arbitration Association is well suited to offer guidance in developing responsible ADR programs designed to address workplace conflict.

## Legal Basis of Employment ADR

Since 1990, Congress has twice reaffirmed the important role of ADR in the area of employment discrimination with the Americans with Disabilities Act in 1990 and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. The lead case is *Gilmer v. Interstate/Johnson Lane,* 500 U.S. 20, 111 S.Ct. 1647 (1991). In *Gilmer*, the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the Gilmer Supreme Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act (FAA).

The specific issue left open by *Gilmer* was decided 10 years later by the United States Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers, such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While *Circuit City* involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA. *Circuit City* did not answer the question of whether an arbitration agreement that fails to mention, for example, what rules will govern the arbitration proceeding or how an arbitrator will be chosen, would be enforceable. At least one federal circuit court of appeals has indicated that such factors may play a role in the enforceability of arbitration agreements. *See Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306 (6th Cir. 2000), cert. denied, 121 S.Ct. 763 (2001).

The United States Supreme Court decided two other important cases. In *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79 (2000), aff 'd by, *Randolph v.*

*Green Tree Fin. Corp. Alabama*, 244 F.3d 814 (2001), the Supreme Court held, in the context of consumer arbitration, that an arbitration agreement that does not mention arbitration costs and fees is not per se unenforceable in that it fails to affirmatively protect a party from potentially steep arbitration costs. A party who seeks to invalidate an arbitration agreement on the ground of prohibitive expense bears the burden of showing the likelihood of incurring such costs. To make certain all persons with employment claims arising from employer-promulgated plans are able to access the arbitration forum, the AAA's current policy is that the employer will pay all administrative filing fees above $150 (a typical court filing fee) and all compensation for the neutral. The AAA's policy contains two narrow exceptions to balance the protections: if a case is determined by the arbitrator to have been filed frivolously or if a case is filed with intent to harass.

In *Equal Employment Opportunity Comm'n v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754 (2002), the Supreme Court held that because the EEOC is not a party to an arbitration agreement, it is not bound by its terms. The EEOC said the Court is the master of its own case. By federal statute, the EEOC has the authority to evaluate the strength of the public interest at stake and to determine whether public resources should be committed to the recovery of victim-specific relief or the full panoply of remedies the statute entitles the EEOC to seek. Today, most federal and state courts support employer-imposed arbitration systems if they are fair to all participants. The notion of fairness includes accurate and timely notice and the ability to retain counsel, secure adequate discovery, receive a reasoned award and maintain the right to secure the same forms of relief available to those in litigation. The AAA continues to assert that employer-promulgated plans must follow the Employment Due Process Protocol to be administered by the AAA.

## The Fairness Issue: The Due Process Protocol

The *Due Process Protocol* for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship was developed in 1995 by a special task force comprised of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government and the American Arbitration Association. The *Due Process Protocol*, endorsed by the American Arbitration Association in 1995, seeks to provide fairness and equity in resolving workplace disputes, encouraging mediation and arbitration of statutory disputes, provided due process safeguards exist. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes

the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes," but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies, as well as the AAA, including the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators and the Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol.* It has been incorporated into the *Report of the United States Secretary of Labor's Task Force on Excellence in State and Local Government* and cited with approval in numerous court opinions. The full text of the Due Process Protocol appears in the Appendix beginning on page **17**.

## AAA's Employment Arbitration Rules and Mediation Procedures

On June 1, 1996, the Association issued its first *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures*). The rules, revised several times since, have been developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enable parties to have complaints heard by an impartial person of their joint selection with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules include procedures that provide due process in both the mediation and arbitration of employment disputes.

## AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs that meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*. If the Association determines that a dispute resolution program substantially and materially deviates from at least the minimum of those standards, it will decline to administer cases under that program. Issues not related to compliance with the *Due Process Protocol* will be presented to the arbitrator for determination.

## Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it must, at least thirty (30) days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 S. Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

## Costs of Employment Arbitration

The *Employment Arbitration Rules and Mediation Procedures* contain two separate and distinct arbitration costs sections: one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer- promulgated plan or an individually negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

## Designing an ADR Program

The Association's experience and belief is that any ADR method used in the employment context is most effective when the parties knowingly and voluntarily agree on the process and have confidence in the neutrality of the mediator or arbitrator, the procedures and the institution under which their case is being administered.

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. With its considerable experience in administering and designing employment ADR plans, the American Arbitration Association offers an informed perspective on how to effectively design ADR systems, as well as what problems to avoid. The AAA encourages:

■ Employers to consider the wide range of available options to resolve workplace disputes outside the courtroom.

■ A special emphasis be placed on the development of in-house dispute resolution procedures, such as open-door policies, ombuds, peer review and internal mediation.

■ An external mediation component be used to resolve disputes not settled by the internal dispute resolution process.

■ Disputes not resolved by the external mediation be arbitrated. Programs that use arbitration as a final step may employ:

    • Pre-dispute, voluntary final and binding arbitration;

    • Pre-dispute, mandatory non-binding arbitration;

    • Pre-dispute, mandatory final and binding arbitration; or

    • Post-dispute, voluntary final and binding arbitration.

The principles outlined above are examined in detail below:

*The American Arbitration Association encourages employers to consider the wide range of legally available options to resolve workplace disputes outside the courtroom.*

■ Experience has shown that systems that include a series of steps in an attempt to resolve disputes in their earliest stages are most likely to be successful. A "one-size-fits-all" approach does not work in the employment ADR area. A good employment ADR program will be custom-tailored to suit the needs of the employer and its employees and consistent with the current state of the law and the organization's corporate culture.

A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation.

■ It is in the interest of all parties to resolve disputes as quickly as possible. Therefore, the Association encourages employers to develop in-house dispute resolution systems in an effort to resolve disputes in their early stages. This will minimize the productivity and good will lost during protracted disputes. An impressive variety of alternative dispute resolution options may be selected in one of several combinations from the menu set forth below:

**Open-Door Policy:** Employees are encouraged to meet with their immediate managers or supervisors to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

**Ombuds:** A neutral third party (either from within or outside the company) is designated to investigate confidentially and propose settlement of employment complaints brought by employees.

**Peer Review:** A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

**Internal Mediation:** A neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a non-binding process.

**Fact-finding:** An impartial third person or team investigates a complaint. This person or team examines the complaint and the facts and issues a non-binding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, comprised of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

*The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.*

■ The in-house methods described above will resolve an overwhelming percentage of workplace disputes. For those matters not resolved by these methods, the Association strongly encourages employers to use external mediation. External mediation is a process in which the parties discuss their dispute with an impartial

person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties. Mediation offers the advantage of informality, with reduced time and expense needed to resolve disputes. Perhaps the greatest benefit, aside from relatively low cost, is that mediation has an 85% settlement rate. The AAA's *Employment Arbitration Rules and Mediation Procedures* has a mediation component to encourage parties to take advantage of this process.

■ The AAA has developed a roster of experienced mediators, knowledgeable in the employment field. It assists the parties in selecting the right mediator for their dispute and in scheduling a meeting.

*Disputes not resolved by the external mediation can be arbitrated.*

■ Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be, and often is, the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step, including:

**Pre-Dispute, Voluntary Final and Binding Arbitration:** The parties agree in advance to use arbitration to resolve disputes, and they are bound by the outcome.

**Pre-Dispute, Mandatory Non-binding Arbitration:** The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

**Pre-Dispute, Mandatory Final and Binding Arbitration:** The parties must arbitrate unresolved disputes and they are bound by the outcome.

**Post-Dispute, Voluntary Non-binding Arbitration:** The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

*The Association's experience and belief is that any ADR method used in the employment context is most effective when the parties knowingly and voluntarily agree on the process and have confidence in the neutrality of the mediator or arbitrator and the procedures and the institution under which their case is being administered.*

■ Although the AAA administers binding arbitration programs required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*. If the ADR plan conforms to the Rules and the Protocol, the Association will administer disputes arising from it, pending future legal developments.

## Checklist for Employment Arbitration Programs

To aid drafters of employment arbitration programs, the following checklist is provided. The plan should:

- **Include a fair method of cost sharing between the employer and employee, which requires the employer to pay a substantial portion of the administrative fees and the arbitrator's fees to ensure affordable access to the system for all employees.**

  AAA rules require the employer in cases arising from employer- promulgated plans to absorb all administrative fees above $150 (a typical filing fee in court), and all of the neutral's compensation. Of course, the employer can absorb all filing fees and the additional hearing costs. If, however, an employee raises an objection and asks to assume a larger portion of the costs of arbitration, an employer is wise to do so in order to protect the process, and avoid the appearance of bias. Use a neutral ADR provider and an established, fair procedure to govern the arbitration. It is important to designate a neutral arbitral organization, such as the American Arbitration Association, to administer the external component of the program, such as the mediation and/or arbitration processes, and to specify the *Employment Arbitration Rules and Mediation Procedures.* The American Arbitration Association as administrator acts as a buffer between the parties and the neutral, collecting and disbursing arbitrator compensation, ruling on objections pertaining to the arbitrator's continued service, and preventing *ex parte* communication between one party and the arbitrator. The plan also should follow the *Due Process Protocol.*

- **Specify the qualifications and number of arbitrators.**

  The Association's national employment panel is comprised of a select group of employment law experts including former judges, labor and employment management and plaintiff attorneys, corporate counsel, labor arbitrators and human resource professionals. Arbitrators on this panel have significant employment law experience, particularly in dealing with issues involving statutory rights. The employment ADR program also may specify additional qualifications of the arbitrator.

  Per the AAA's Rules, one arbitrator hears employment arbitrations unless the parties' agreement provides that a panel of three arbitrators shall hear the dispute.

  There are benefits and drawbacks to either number. Appointing an arbitrator and scheduling hearings is easier with one arbitrator than with three, and compensation of the neutral is less. However, as the stakes increase, some parties feel more comfortable having their dispute decided by a panel of three individuals.

- **Specify the employees to be covered.**

  The program should describe which employees are included in it. For example:

  - All employees not covered by collective bargaining agreements

  - Certain divisions, departments or work groups

- • Certain categories of employees such as executives, supervisors or professionals

- • Salaried employees or hourly employees

- • New hires only

- ■ Specify the nature of the claims to be covered, including express reference to employment disputes and/or specific statutory claims such as Title VII and ADEA. Some employers may want the ADR provision to be as broad as possible, while others may choose to exclude certain types of claims. The range of issues to be covered or excluded may include:

  - • Termination

  - • Benefits

  - • Statutory claims

  - • Sexual harassment

  - • Wages and compensation

  - • Performance evaluation

- ■ **Give employees clear notice of their right of representation.**

  The plan should provide that counsel or any person whom the employee designates at any stage of the external review process might represent the employee. Plans may also provide information about institutions that offer assistance to parties who cannot afford representation, such as bar associations, legal service associations and civil rights organizations.

- ■ **Consider providing a fair method for reimbursement of at least a portion of the employee's legal fees, especially for lower-paid employees,** by tying a legal assistance benefit to the employment dispute ADR program.

- ■ **Provide time frames for filing a claim that are consistent with applicable statutes of limitation as stipulated** by the *Employment Arbitration Rules and Mediation Procedures* and establish a level of clarity regarding when claims must be filed.

- ■ **Provide for fair and adequate discovery.**

- ■ The ADR program should include a fair and simple method by which the parties can obtain the necessary information to present their claim. The plan should provide that the arbitrator would decide any disputes regarding the extent of discovery.

- ■ **Allow for the same remedies and relief that would have been available to the parties had the matter been heard in court.**

  Under the *Employment Arbitration Rules and Mediation Procedures*, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. This authority includes the right to award compensatory and exemplary (or punitive) damages, attorneys' fees and other remedies to the extent those remedies would be available under applicable law

in court. The *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol* do not permit programs to place restrictions on available remedies.

■ **State clearly that it does not preclude an employee from filing a complaint with a federal, state or other governmental administrative agency.**

A plan that prohibits employees from filing complaints with the EEOC, NLRB or other agencies charged with protecting the statutory rights of employees may be subject to successful legal challenge. Moreover, an agency is generally free to pursue a complaint from "any source" or even on its own volition. (See Equal Employment Opportunity Comm'n v.Waffle House, Inc., 534 U.S. 279, 122 S. Ct. 754 (2002), holding that an agreement between an employer and an employee to arbitrate employment- related disputes does not bar the EEOC from pursuing victim-specific judicial relief, such as back pay, reinstatement, and damages, in an enforcement action alleging that the employer violated Title 1 of the Americans with Disabilities Act of 1990.)

■ **Provide adequate notice to employees prior to the plan implementation.**

It is important to give employees adequate notice of the planned implementation date of the employment ADR program. This also will allow time to prepare supervisors as to their roles. The "lead time" will depend on several factors, including the nature of the plan, the number of employees and the number of offices (or locations).

■ **Ensure that the employment ADR plan is written in a clear and easily understood manner.**

Employment ADR plans should be easily understood by all employees. Legal jargon should be avoided or kept to a minimum.

## Summary of Options

In summary, there are many options available to drafters of employment ADR systems.

- Internal ADR Options
  - Open Door Policy
  - Peer Review
  - Ombuds
  - Internal Mediation
- External ADR Options
  - Fact-Finding
  - External Mediation
  - Pre-dispute, Voluntary Final and Binding Arbitration
  - Pre-dispute, Mandatory Non-binding Arbitration
  - Pre-dispute, Mandatory Final and binding Arbitration
  - Post-dispute, Voluntary Non-binding Arbitration

## Examples of Employment ADR Systems

Given the many variables involved in establishing a sound, responsible employment ADR system that suits the needs of a specific employer and its employees, no one model can be presented as representing the best approach.

The American Arbitration Association has worked with many companies to establish a wide variety of ADR programs that it administers and will make them available to those designing employment ADR programs.

## Conclusion

The employment ADR field is in a state of rapid expansion. As a result, employers will want to be circumspect in their promulgation of ADR plans. Copies of the American Arbitration Association's *Employment Arbitration Rules and Mediation Procedures* and other materials, guides and articles related to employment ADR may be obtained on our website at **www.adr.org**.

# Appendix

# I. ADR Clauses

Reproduced below are just a few examples of ADR clauses that can be used in connection with employment ADR plans. It is by no means an exhaustive compilation.

## Mediation Clause

Parties can provide for mediation of disputes by using the following language in the appropriate document and inserting an appropriate time period to conclude mediation:

> *If a dispute arises out of or relates to this [employment application; employment ADR program; employment contract] or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures, before resorting to arbitration, litigation or some other dispute resolution procedure.*

## Optional Arbitration of Unresolved Future Disputes

Parties can provide for voluntary arbitration of disputes after a dispute arises by using the following language in the appropriate document:

> *Any controversy or claim arising out of or relating to this [employment application; employment ADR program; employment contract] that is not resolved by the parties, shall, upon the written agreement of the parties after the dispute arises, be settled by arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

## Agreement to Submit an Existing Dispute to Arbitration

Parties can submit a current dispute by using the following language in the appropriate document:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its*

*Employment Arbitration Rules and Mediation Procedures, the following controversy: (cite briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide and perform any award rendered by the arbitrator(s) and that judgment of the court having jurisdiction may be entered on the award.*

## Arbitration Clause for Future Disputes

Subject to the caveats expressed in this Guide, parties can provide for arbitration of future disputes by using the following language in the appropriate document:

*Any controversy or claim arising out of or relating to this [employment application; employment ADR program; employment contract] shall be settled by arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

## II. Due Process Protocol

### A Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship

The following Protocol is offered by the undersigned individuals, members of the Task Force on Alternative Dispute Resolution in Employment, as a means of providing due process in the resolution by mediation and binding arbitration of employment disputes involving statutory rights. The signatories were designated by their respective organizations, but the Protocol reflects their personal views and should not be construed as representing the policy of the designating organizations.

### Genesis

This Task Force was created by individuals from diverse organizations involved in labor and employment law to examine questions of due process arising out of the use of mediation and arbitration for resolving employment disputes. This Protocol is confined to statutory disputes.

The members of the Task Force felt that mediation and arbitration of statutory disputes conducted under proper due process safeguards should be encouraged in order to provide expeditious, accessible, inexpensive and fair private enforcement of statutory employment disputes for the 100 million members of the workforce who might not otherwise have ready, effective access to administrative or judicial relief. They also hope that such a system will serve to reduce the delays that now arise out of the huge backlog of cases pending before administrative agencies and courts and that it will help forestall an even greater number of such cases.

### Pre- or Post-Dispute Arbitration

The Task Force recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes.

It did not achieve consensus on this difficult issue. The views in this spectrum are set forth randomly, as follows:

- Employers should be able to create mediation and/or arbitration systems to resolve statutory claims, but any agreement to mediate and/or arbitrate disputes should be informed, voluntary and not a condition of initial or continued employment.

- Employers should have the right to insist on an agreement to mediate and/or arbitrate statutory disputes as a condition of initial or continued employment. Postponing such an agreement until a dispute actually arises, when there will likely exist a stronger predisposition to litigate, will result in very few agreements to mediate and/or arbitrate, thus negating the likelihood of effectively utilizing alternative dispute resolution and overcoming the problems of administrative and judicial delays which now plague the system.

- Employees should not be permitted to waive their right to judicial relief of statutory claims arising out of the employment relationship for any reason.

- Employers should be able to create mediation and/or arbitration systems to resolve statutory claims, but the decision to mediate and/or arbitrate individual cases should not be made until after the dispute arises.

The Task Force takes no position on the timing of agreements to mediate and/or arbitrate statutory employment disputes, though it agrees that such agreements be knowingly made. The focus of this Protocol is on standards of exemplary due process.

### Right of Representation

*Choice of Representative*

Employees considering the use of or, in fact, utilizing mediation and/or arbitration procedures should have the right to be represented by a spokesperson of their own choosing. The mediation and arbitration procedure should so specify and should include reference to institutions which might offer assistance, such as bar associations, legal service associations, civil rights organizations, trade unions, etc.

*Fees for Representation*

The amount and method of payment for representation should be determined between the claimant and the representative. We recommend, however, a number of existing systems which provide employer reimbursement of at least a portion of the employee's attorney fees, especially for lower-paid employees. The arbitrator should have the authority to provide for fee reimbursement, in whole or in part, as part of the remedy in accordance with applicable law or in the interests of justice.

*Access to Information*

One of the advantages of arbitration is that there is usually less time and money spent in pre-trial discovery. Adequate but limited pre-trial discovery is to be encouraged and employees should have access to all information reasonably relevant to mediation and/or arbitration of their claims. The employees' representative should also have reasonable pre-hearing and hearing access to all such information and documentation.

Necessary pre-hearing depositions consistent with the expedited nature of arbitration should be available.

We also recommend that prior to selection of an arbitrator, each side should be provided with the names, addresses and phone numbers of the representatives of the parties in that arbitrator's six most recent cases to aid them in selection.

**Mediator and Arbitrator Qualification**

*Roster Membership*

Mediators and arbitrators selected for such cases should have skill in the conduct of hearings, knowledge of the statutory issues at stake in the dispute and familiarity with the workplace and employment environment. The roster of available mediators and arbitrators should be established on a nondiscriminatory basis, diverse by gender, ethnicity, background, experience, etc., to satisfy the parties that their interests and objectives will be respected and fully considered.

Our recommendation is for selection of impartial arbitrators and mediators. We recognize the right of employers and employees to jointly select as mediator and/or arbitrator one in whom both parties have requisite trust, even though not possessing the qualifications here recommended, as most promising to bring finality and to withstand judicial scrutiny.

The existing cadre of labor and employment mediators and arbitrators—some lawyers, some not—although skilled in conducting hearings and familiar with the employment milieu, is unlikely, without special training, to consistently possess knowledge of the statutory environment in which these disputes arise and of the characteristics of the nonunion workplace.

There is a manifest need for mediators and arbitrators with expertise in statutory requirements in the employment field who may, without special training, lack experience in the employment area and in the conduct of arbitration hearings and mediation sessions. Re-examination of rostering eligibility by designating agencies, such as the American Arbitration Association, may permit the expedited inclusion in the pool of this most valuable source of expertise.

The roster of arbitrators and mediators should contain representatives with all such skills in order to meet the diverse needs of this caseload.

Regardless of their prior experience, mediators and arbitrators on the roster must be independent of bias toward either party. They should reject cases if they believe the procedure lacks requisite due process.

*Training*

The creation of a roster containing the foregoing qualifications dictates the development of a training program to educate existing and potential labor and employment mediators and arbitrators as to the statutes, including substantive, procedural and remedial issues to be confronted and to train experts in the statutes as to employer procedures governing the employment relationship as well as due process and fairness in the conduct and control of arbitration hearings and mediation sessions.

Training in the statutory issues should be provided by the government agencies, bar associations, academic institutions, etc., administered perhaps by the designating agency, such as the AAA, at various locations throughout the country. Such training should be updated periodically and be required of all mediators and arbitrators. Training in the conduct of mediation and arbitration could be provided by a mentoring program with experienced panelists.

Successful completion of such training would be reflected in the resume or panel cards of the arbitrators and mediators supplied to the parties for their selection process.

*Panel Selection*

Upon request of the parties, the designating agency should utilize a list procedure such as that of the AAA or select a panel composed of an odd number of mediators and arbitrators from its roster or pool. The panel cards for such individuals should be submitted to the parties for their perusal prior to alternate striking of the names on the list, resulting in the designation of the remaining mediator and/or arbitrator.

The selection process could empower the designating agency to appoint a mediator and/or arbitrator if the striking procedure is unacceptable or unsuccessful. As noted above, subject to the consent of the parties, the designating agency should provide the names of the parties and their representatives in recent cases decided by the listed arbitrators.

*Conflicts of Interest*

The mediator and arbitrator for a case has a duty to disclose any relationship which might reasonably constitute or be perceived as a conflict of interest.

The designated mediator and/or arbitrator should be required to sign an oath provided by the designating agency, if any, affirming the absence of such present or pre-existing ties.

*Authority of the Arbitrator*

The arbitrator should be bound by applicable agreements, statutes, regulations and rules of procedure of the designating agency, including the authority to determine the time and place of the hearing, permit reasonable discovery, issue subpoenas, decide arbitrability issues, preserve order and privacy in the hearings, rule on evidentiary matters, determine the close of the hearing and procedures for post-hearing submissions and issue an award resolving the submitted dispute.

The arbitrator should be empowered to award whatever relief would be available in court under the law. The arbitrator should issue an opinion and award setting forth a summary of the issues, including the type(s) of dispute(s), the damages and/or other relief requested and awarded, a statement of any other issues resolved, and a statement regarding the disposition of any statutory claim(s).

*Compensation of the Mediator and Arbitrator*

Impartiality is best assured by the parties sharing the fees and expenses of the mediator and arbitrator. In cases where the economic condition of a party does not permit equal sharing, the parties should make mutually acceptable arrangements to achieve that goal if at all possible. In the absence of such agreement, the arbitrator should determine allocation of fees. The designating agency, by negotiating the parties' share of costs and collecting such fees, might be able to reduce the bias potential of disparate contributions by forwarding payment to the mediator and/or arbitrator without disclosing the parties' share therein.

### Scope of Review

The arbitrator's award should be final and binding and the scope of review should be limited.

*Dated: May 9, 1995*

## Signatories

**Christopher A. Barreca,** *Co-Chair*
Partner, Paul, Hastings, Janofsky & Walker
Representative, Council of Labor & Employment Section, American Bar Association

**Max Zimny,** *Co-Chair*
General Counsel, International Ladies' Garment Workers' Union
Representative, Council of Labor & Employment Section, American Bar Association

**Arnold Zack,** *Co-Chair*
(Former) President, National Academy of Arbitrators

**Carl E. VerBeek**
Partner, Varnum, Riddering, Schmidt & Howlett
Management Co-Chair, Arbitration Committee of Labor & Employment Section, ABA

**Robert D. Manning**
Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C.
Union Co-Chair, Arbitration Committee of Labor & Employment Section, ABA

**Charles F. Ipavec**
Arbitrator
Neutral Co-Chair, Arbitration Committee of Labor & Employment Section, ABA

**George H. Friedman**
(Former) Senior Vice President, American Arbitration Association

**Michael F. Hoellering**
(Former) General Counsel, American Arbitration Association

**W. Bruce Newman**
Representative, Society of Professionals in Dispute Resolution

**Wilma Liebman**
Special Assistant to the Director Federal Mediation & Conciliation Service

**Joseph Garrison**
(Former) President, National Employment Lawyers Association

**Lewis Maltby**
(Former) Director Workplace, Rights Project American Civil Liberties Union

*© 2014 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*