**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| STEVEN MATTHEWS, Individually and On Behalf of Others Similarly Situated, | Case No.: 6:15-cv-00448-MHS Collective Action |
| v. | JUDGE MICHAEL H. SCHNEIDER |
| PRIORITY ENERGY SERVICES, LLC. | MAG. JUDGE K. NICOLE MITCHELL |

**NON-PARTY CLAIMANTS' OPPOSITION TO**
**DEFENDANTS' MOTION TO "ENFORCE" ARBITRATION AGREEMENT**
**OR VACATE ORDER COMPELLING ARBITRATION**

**A.    SUMMARY**

Priority insisted this Court order arbitration because its arbitration agreement mandates

arbitration of "**any claims or disputes of any sort** … **arising in any way from** [Priority's]

Agreement." ECF No. 54 at 2 (emphasis in original). But now that Priority is unhappy with the way

things are going in arbitration, it wants to reverse course and have the Court decide (on a classwide

basis no less) issues assigned to the arbitrators or vacate the Court's order (that it requested)

compelling arbitration altogether. Fifth Circuit precedent forecloses Priority's efforts to avoid

arbitration.

Where—as here—the "parties expressly incorporated into their arbitration agreement the

AAA Rules[,]" this is "clear and unmistakable evidence that the parties agreed to arbitrate

arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Thus, any concerns regarding the "existence, scope, or validity of the arbitration agreement" are for

the arbitrators, not for this Court. *Id.* Because Priority must resolve any dispute "of any sort …

arising in any way from" its Agreement in arbitration, Priority's motion must be denied. *Id.*

**B.** **ARGUMENT & AUTHORITIES**

    1.  **Priority Agrees Its Arbitration Agreement Is Valid & Covers All Disputes.**

In evaluating a motion to compel arbitration, the Court must ordinarily start with two

questions: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question

fall within the scope of that arbitration agreement"? *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379,

381 (5th Cir.2008). If both questions are answered with a "yes," the Court generally has no

discretion and must send the dispute to arbitration.

Priority explained at length that it entered into a valid arbitration agreement with its employees.

*See* ECF No. 54 at 5-6. Priority also told this Court that all disputes must be resolved through

arbitration.

> The Arbitration Agreement specifically states that it applies to "any claims or disputes
> of *any sort* arising in the past, present or future between the Company and [the
> Signatory Plaintiffs] . . . *arising in any way from* . . . [the *Signatory Plaintiffs'] employment* with
> the Company." *Exhibit A*, at ¶¶9, 10 (emphasis added).
>
> In this lawsuit, Plaintiffs, including the Signatory Plaintiffs, assert that Priority failed
> to properly compensate them for overtime hours they worked in contravention of the
> FLSA. Dkt. No. 1. Each and every Plaintiff entered into the Arbitration Agreement
> *well before* they opted into this lawsuit. *See Exhibit A*; Dkt. Nos. 4, 18, 19, 26, 27, 33.
> Accordingly, the claims at issue in the current dispute are covered disputes under the
> Arbitration Agreement and must be arbitrated. *See Exhibit A*; *Amegy*, 870 F. Supp. 2d
> at 447 ("The FAA 'leaves no place' for the court to exercise discretion … The court
> must direct the parties to proceed to arbitration on issues as to which an arbitration
> agreement has been signed." (citing *Byrd*, 470 U.S. at 218).

ECF No. 54 at 6. Now, Priority seeks to divorce itself from the positions it has taken in front of this

very Court. But it cannot. Priority was required to seek relief from the AAA, not from this Court.

    2.  **The Language of Priority's Arbitration Agreement Requires this Dispute be Resolved in Arbitration (not in Court).**

The clause governing disputes between Priority and its employees reads:

> **Arbitration and Waiver of Class Claims.** I agree that **any claims or disputes** of
> any sort whether arising in the past, present or future between the Company and me
> and/or Company's employees, directors, parents, subsidiaries, affiliates, agents or
> representatives (collectively, "Company Parties") **arising in any way from this**

> **Agreement** or my employment with the Company **shall be resolved exclusively through binding arbitration under the Federal Arbitration Act and the pertinent American Arbitration Association Rules in effect at that time.** Any such claims or disputes **must be arbitrated on an individual basis,** and neither you nor the Company Parties may proceed with any such claims or disputes as a class representative or participant in a class or collective action, or in combination with any other person or entity's claims or disputes. The Arbitrator shall issue a reasoned award and shall not award relief in a form or amount that exceeds that available under applicable law. The parties shall split all costs of arbitration, subject to the availability of the arbitrator to reapportion costs of arbitration, attorneys' fees and expert witness fees in the award.

*See* ECF No. 110-12 (emphasis added). Thus, any dispute arising in any way from the arbitration agreement must be "resolved exclusively through binding arbitration under the … American Arbitration Association Rules[.]" *See* ECF No. 110-12.

This is particularly true given Priority's explicit adoption of the American Arbitration Association (AAA) rules. Under the AAA's rules, "parties **shall be deemed** to have made [the AAA's] rules a part of their arbitration agreement[.]" *See* AAA Employment Arbitration Rules and Mediation Procedures (AAA Employment Rules) at Rule 1, p. 15 (emphasis added).[1] Therefore, **the AAA Employment Rules are express terms of Priority's Agreement**. *Id.* And these rules give the **arbitrator** "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and the "existence or validity of a contract of which an arbitration clause forms a part." *Id.* at Rule 6(a)-(b); *Petrofac, Inc.*, 687 F.3d at 675. As a result, Priority's dispute regarding the application of its alleged cost splitting provision must be resolved via arbitration. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 204 (5th Cir. 2016) (by delegating arbitrability to the arbitrator, "the parties agreed that the arbitrator and not the court should be the decisionmaker").[2]

---

[1] Available at: https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_004366
[2] *See also, Beaumont Foot Specialists, Inc. v. United Healthcare of Texas, Inc.*, No. 1:15-CV-216, 2015 WL 9703796, at *2 (E.D. Tex. Dec. 22, 2015) ("it is clear that parties expressly adopting the AAA's rules

For the similar reasons, Priority's "waiver" arguments miss the mark. Under the AAA Employment Rules, which are deemed to be a part of Priority's Agreement, specifically state that disputes about costs will be resolved in arbitration. *See, e.g.,* AAA Employment Rules at 31-32. But even without reference to the incorporated rules, a dispute regarding the application of the costs splitting provision is a "dispute" of some kind "arising from" Priority's Agreement. *See* ECF No. 110-12. Therefore, under the unadorned terms of Priority's Agreement, a dispute arising from the language of the Agreement is to be resolved in arbitration, not in court. Thus, Claimants had no cause to raise the issue of cost splitting before this Court. Having read the agreement and the AAA Employment Rules, they knew how costs would be allocated and, more importantly, that the issue would be decided in arbitration.

### 3.   Costs of Arbitration is a Procedural Issue for the Arbitrators to Decide.

Even if Priority hadn't assigned issues of substantively arbitrability to the arbitrator (and it did), arbitration would still be the forum for addressing the allocation of arbitration costs. Again, everyone agrees there is "an agreement to arbitrate" in this case. *See* ECF No. 87 at 4. Thus, the "only question is whether the instant dispute falls within the agreement to arbitrate." *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009). "In determining whether a dispute falls within the agreement to arbitrate, the Supreme Court has decided that, absent an agreement to the contrary, the parties intend that the arbitrator, not the courts, should decide certain procedural questions which grow out of the dispute and bear on its final disposition." *Id.* (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002).

---

agree not only to arbitrate arbitrability, but also to arbitrate the validity of the arbitration agreement itself"), *adopted,* 2016 WL 165023 (E.D. Tex. Jan. 14, 2016).

And Fifth Circuit precedent is clear: "Payment of fees is a procedural condition precedent that the trial court should not review." *Dealer Computer Servs., Inc.*, 588 F.3d at 887. In fact, the AAA Employment Rules specifically address how costs of arbitration will be allocated, and how disputes regarding the allocation will be resolved. *See* AAA Employment Rules at 31-32. Priority cannot avoid arbitration simply because it doesn't like how the arbitration decisions are coming out. In short, Priority's "remedy lies with the arbitrators"—not this Court. *Dealer Computer Servs., Inc.*, 588 F.3d at at 888.[3]

### 4. The Parties Agreed to Arbitrate <u>Any</u> Disputes Regarding the Agreement.

Preliminary issues in arbitration cases include gateway disputes, which typically require judicial determination, and procedural questions, which are to be reviewed by the arbitrator. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003) (plurality opinion). The arbitrability of disputes—in other words, the determination of whether the agreement applies to the parties' claims—is generally a gateway issue to be determined by the courts. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). This issue, however, is deferred to arbitration where the agreement espouses the parties intent to do so. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[T]he 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'") (internal citations omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.") (internal citation omitted); *Gen. Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 247 (5th Cir. 1998).

---

[3] While "the solution may not be totally satisfactory, but it preserves the flexibility and discretion in the hands of the arbitrators, a policy end the FAA favors." *Id.* at 888.

When the arbitration agreement at issue "includes broad coverage language, such as … '**all** disputes, claims, or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator." *Robinson*, 817 F.3d at 196 (citing *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 359 (5th Cir. 2003)) (emphasis in original). **Such sweeping language is not to be confused with silence**. *Id.* Indeed, the broad deferral of questions concerning the scope of arbitration means that the questions must be submitted to the arbitrator and not adjudicated by the court. *Id.* (citing *Green Tree*, 539 U.S. at 453).

The agreement between Priority's employees and Priority unambiguously compels to arbitration "any claims or disputes of any sort whether arising in the past, present or future between the Company and me and/or Company's employees, directors, parents, subsidiaries, affiliates, agents or representatives (collectively, "Company Parties") arising in any way from this Agreement or my employment with the Company. . ." *See, e.g.,* ECF No. 110-12. Disputes "of any sort … arising in any way from [Priority's] Agreement" must be resolved "exclusively" via arbitration. *Id.*

Similar language has been repeatedly held to compel the deferral of arbitrability to an arbitrator. *Green Tree*, 539 U.S. at 448 ("[a]ll disputes, claims or controversies arising from or relating to this contract"); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010) ("any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"); *Robinson v. J & K Admin. Mgmt. Svcs., Inc.*, 817 F.3d 193, 197 (5th Cir. 2016) ("claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim"); *Pedcor Mgmt.*, 343 F.3d 359 ("any dispute … in connection with the Agreement").  Here, the Parties agreed broadly that any dispute, of any sort, arising in any way from Priority Agreement must be decided by the arbitrator. *See, e.g.,* ECF No. 110-

12. With such sweeping language, the Parties clearly intended for the arbitrator to decide all issues related to the arbitration agreement.

### 5. The Enforcement of the Arbitration Agreement Cannot Be Handled in Court, Much Less on a Collective or Class Action Basis.

It is more than a little ironic that Priority is complaining about a failure to abide by the terms of the Agreement it drafted. After all, Priority's attempt to have the Court decide this issue on a collective basis, impacting multiple claimants and respondents, contravene the express terms of its arbitration agreement. Priority's Agreement specifically prohibits it from proceeding with **any** dispute "in combination with any other person or entity's claims or disputes." *See* ECF No. 110-12. Rather, all "disputes must be **arbitrated** on an **individual** basis." *Id.* Having imposed this procedure on its employees, Priority cannot walk away from the requirement that disputes proceed in arbitration, on "an individual basis," simply because it doesn't like the way arbitration is going. Priority's effort at seeking class-wide relief in Court (after requiring its employees to forgo both Court and class-wide procedures) shocks the conscience.

### 6. Priority Provide No Basis for Reversing the AAA's Determination.

Priority concedes the AAA "determined that [each] dispute arises from an employer-promulgated plan" and will therefore be governed by the "Costs of Arbitration" provided for by the AAA Employment Rules that Priority incorporated into its Agreement. *See, e.g.,* ECF No. 110-2 (AAA determination letter); AAA Employment Rule 1 (if the AAA's rules are selected by the employer, they "shall be deemed" to be part of the arbitration agreement). It nonetheless studiously avoids discussing the standard for reversing a determination made in arbitration. That is likely because "the sole question" for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013).

And here, the terms of Priority's Agreement incorporate the AAA Employment Rules. *See* ECF No. 110-12 (disputes shall be "resolved exclusively through binding arbitration under … the pertinent American Arbitration Association Rules in effect at that time"); AAA Employment Rule 1 ("parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association"). Thus, Priority selected a set of rules that expressly state that in the event of a material conflict between the arbitration agreement and the AAA rules, the AAA rules control. *Id.* at Rule 1. And the AAA Employment Rules dictate that Priority pay the majority of the arbitration costs resulting from its employer promulgated plan.

This is stark contrast to the New York case Priority relies on so heavily. *See* ECF No. 110 at 7-9 (citing *Brady v. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 462, 928 N.E.2d 383 (2010)). In that case, "the parties explicitly agreed to be bound by the provisions of the arbitration agreement where there was a conflict between the agreement and the AAA rules[.]" *Brady v. Williams Capital Grp., L.P.*, 64 A.D.3d 127, 132, 878 N.Y.S.2d 693, 698 (2009), *aff'd as modified,* 14 N.Y.3d 459, 928 N.E.2d 383 (2010). But as the Court noted, the "**parties were free to have the AAA rules supersede the arbitration agreement where there was a conflict between them**, but decided to do otherwise." *Id.*

In this case, the arbitration agreement adopts—rather than overrules—the AAA's rule with respect to conflicts. *See, e.g.,* ECF No. 110-12; AAA Employment Rule 1. And these rules are "an important part of the arbitration agreement" that must be applied. *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 264 (5th Cir. 2015). Therefore, even if this Court were to apply the analysis of the New York court, the AAA's Rules would control and the costs of arbitration would be allocated in accordance with those rules.

Of course, this assumes there is actually a conflict between Priority's Agreement and the AAA Employment Rules. Priority's Agreement only states that the parties will "split" the costs of arbitration, it does not state in what proportion. ECF No. 110-12. Rather, these details are filled in by the AAA Employment Rules selected by Priority. *See* AAA Employment Rules at 31-32. This fact further distinguishes *Brady*, as the agreement in that case called for the parties to "equally share the fees and costs of the arbitration." *Brady*, 14 N.Y.3d at 462. Here, the Claimants are clearly "splitting" the costs of arbitration with Priority already, not "equally" but rather in accordance with the incorporated rules.

So even if Premier was making its arguments in the right venue, they would fail. They certainly would not meet the standard required for reversing the AAA's determination. *Oxford Health Plans LLC*, 133 S. Ct. at 2068; *Campbell Harrison & Dagley, L.L.P. v. Hill*, 782 F.3d 240, 244 (5th Cir.), *cert. denied,* 136 S. Ct. 247, 193 L. Ed. 2d 134 (2015) ("A court's decision to confirm or vacate an arbitration award is reviewed *de novo,* but, such review is extraordinarily narrow and every reasonable presumption must be indulged to uphold the arbitrator's decision"). However, the reality is the Court should simply deny Priority's motion altogether, as the decision regarding this dispute is to be made in arbitration.

## C.    CONCLUSION.

The Court should deny Priority's request to take away from the arbitrators the authority Priority granted to them when drafted and imposed its arbitration clause. Disputes regarding the allocation of costs associated with Priority's arbitration agreement must be resolved in arbitration.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson
    State Bar No. 24014780
    mjosephson@fibichlaw.com
    Andrew W. Dunlap
    State Bar No. 24078444
    adunlap@fibichlaw.com
    Lindsay R. Itkin
    State Bar No. 24068647
    litkin@fibichlaw.com
    Jessica M. Bresler
    State Bar No. 24090008
    jbresler@fibichlaw.com
    **FIBICH, LEEBRON, COPELAND,**
    **BRIGGS & JOSEPHSON**
    1150 Bissonnet
    Houston, Texas 77005
    713-751-0025 – Telephone
    713-751-0030 – Facsimile

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Matthew S. Parmet
    Texas Bar No. 24069719
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com
    mparmet@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on April 7, 2017.

        /s/ *Andrew W. Dunlap*
        Andrew W. Dunlap