UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STEVEN MATTHEWS, Individually and on behalf of other employees similarly situated | § § § § | No. 6:15-cv-00448-MHS |
| Plaintiff(s) | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| PRIORITY ENERGY SERVICES, LLC, et al. | § § § | |
| Defendant. | § § § § | FLSA COLLECTIVE ACTION |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO ENFORCE ARBITRATION AGREEMENTS AS WRITTEN OR TO VACATE ORDER COMPELLING ARBITRATION**

**Daniel D. Pipitone**
Texas Bar No. 16024600
SD Texas Bar No. 294
MUNSCH HARDT KOPF & HARR, PC
700 Milam Street, Suite 2700
Houston, Texas 77002
Tel:  (713) 222-4060
Fax:  (713) 222-5813

dpipitone@munsch.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

**Michael A. Harvey**
Texas Bar No. 24058352
SD Texas Bar No. 917759
Tel: (713) 222-4015
Fax: (713) 222-5835
mharvey@munsch.com

**Brenna L. Hill**
Houston, Texas 77002
Texas Bar No. 24058352
SD Texas Bar No. 917759
Tel: (713) 222-4068
Fax: (713) 222-1475

bhill@munsch.com

**OF COUNSEL**

The "Arbitration Claimants" delayed until after this Court compelled arbitration, to disavow "terms" upon which the Parties conditioned their agreements to arbitrate. This issue must be resolved by this Court, because it squarely implicates the "making of the agreement to arbitrate *itself* . . .," *cf. Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004), not the overarching "contract of which an arbitration clause forms *a part*." *Cf.* Non-Party Claimants' Opposition ("Opposition"), p. 3 (emphasis added). The Court is authorized to vacate its Order compelling arbitration if the Claimants continue to refuse to adhere to the contractual terms.

## I.   The Arbitration Agreements Expressly Address Cost Allocation

Irrespective of the Parties' generic incorporation of the AAA rules, the Employment Agreements memorialize the Parties' agreed-upon procedures for cost allocation, i.e., "The parties shall *split* all costs of arbitration, subject to the ability of the arbitrator to *reapportion* costs of arbitration . . . *in the award*." (emphasis added). The arbitration provisions consequentially are not "silent" regarding allocation.

In their opposition briefing, the Arbitration Claimants nevertheless failed to cite a single authority wherein a court treated an *express* contractual condition to split costs, as an issue implicating "existence, scope, or validity" considerations that can be delegated *to* an arbitrator. Even cases regarding delegation of "procedural questions" are constrained by the principle any such delegation is allowed only "*absent* an agreement to the contrary . . . ." Opposition, pp. 4 – 5 (emphasis added).[1]

This Court more generally has held a carve-out clause in an arbitration provision controls over generic incorporation of AAA rules; and a court, not an arbitrator, must resolve the legal

---

[1] Here, the cost-allocation terms are a *condition* of the contract, implicating contract formation and assent. Whereas if a contract is *silent* on allocation, cost indeed would be just another "procedural" issue for arbitration.

effect of carve-outs. *See Archer and White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-cv-572, 2016 WL 7157421, at **5, 7 (E.D. Tex. Dec. 7, 2016) (Gilstrap, J.) ("the clause's exclusion . . . is not part of the AAA's suggested language. . . . Such an intentional drafting effort . . . is worthy of the Court's notice."; "according to Plaintiff, the clause represents an agreement that the AAA rules would govern only when the dispute did not fall within the expressly excluded categories. This *Court* finds such argument to have merit.") (emphasis added).

Here, the Parties did not incorporate by reference the default AAA rules regarding cost allocation, and there is no clause *expressly* delegating to the AAA power to resolve "procedural" questions regarding cost allocation. *Cf. Archer and White Sales, Inc.*, 2016 WL 7157421, at *7.[2] The Parties instead specified cost allocation procedures in their governing arbitration agreements.

The AAA's election to disregard those contractual conditions consequentially was not an exercise of prerogative to assess the "existence, scope, or validity" of the Employment Agreements—it was an affront to the principle parties can be forced to arbitrate *only* in the "manner provided for in [the] agreement." 9 U.S.C. § 4.

II.     **FAA Section 4 Controls—Not Principles Regarding "Scope" of Arbitrable Disputes**

The Arbitration Claimants propose a "through the looking glass" mechanism for evaluating arbitrability, by contending parties *first* must arbitrate to clarify contractual terms that would serve as *pre*-conditions to arbitrate, *then* arbitrate the actual substantive dispute—*assuming* the first step establishes there even is an agreement to arbitrate. This is not what Fifth Circuit jurisprudence contemplates by allowing parties to dictate with "clear and unmistakable language" whether they want an arbitrator to perform "gatekeeper" analyses regarding the scope of

---

[2] The Arbitration Claimants in any event mischaracterize the Employment Rules, which do not "state that disputes about costs will be resolved in arbitration." *Cf.* Opposition, p. 4. Pages 31 – 32 of the Employment Rules address only "categorization" of disputes, not allocation of costs to arbitrate disputes *once categorized*.

arbitrable issues.  *Cf.* Opposition, p. 1 (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)).

The present dispute has nothing to do with "gateway" considerations.  It instead relates to a second set of conditions regarding whether arbitration is consistent with federal policy:

> Courts perform a *two step* inquiry to determine whether to compel a party to arbitrate: <u>*first*</u> whether parties agreed to arbitrate and, <u>*second*</u>, whether federal *statute or policy* renders the claims nonarbitrable. . . . The courts divide the <u>*first*</u> step into *two more* questions: whether a valid agreement to arbitrate exists and whether the dispute falls within that agreement.

*Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009) (emphasis added) (citations omitted).

All of the legal authorities the Arbitration Claimants cite in their opposition briefing relate to the "first step" and its two subordinate questions regarding "whether a valid agreement to arbitrate exists and whether the dispute falls within that agreement."  These are "gatekeeper" questions and subject to the principle a court retains power to undertake the gatekeeper analysis, unless parties through "clear and unmistakable language" divest a court of that power and shift it to an arbitrator.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 – 69 (2010).

But none of those principles are pertinent to the issue before this Court.  Priority did indeed previously "explain . . . that it entered into a valid arbitration agreement . . . [and] told this Court that all disputes must be resolved through arbitration."  Opposition, p. 2.  Initially, the Arbitration Claimants agreed, and this Court accepted that ostensible agreement—but the Arbitration Claimants now attempt to selectively cleave from the purported "agreement," terms upon which the Parties conditioned their willingness to arbitrate.  The Arbitration Claimants consequentially are proposing to proceed under different terms than the agreements Priory treated as "valid arbitration agreements."

3

The Parties' perceived consensus on the "first step" gatekeeper issues consequentially is immaterial. The more fundamental issue here is whether the Parties *at all* reached an agreement to arbitrate within the meaning of federal law. This implicates the "second" step under *Dealer Computer Services, Inc.*—whereby a court must "determine whether to compel a party to arbitrate . . . ." by resolving "whether federal statute or policy renders the claims nonarbitrable . . . ."[3]

Here, the statutory language of 9 U.S.C. § 4, as well as the "policy" considerations that animate the Federal Arbitration Act ("FAA"), all "render[] the claims nonarbitrable." Section 4 of the FAA dictates arbitration can be compelled *only* "in the manner provided for *in* such agreement." (emphasis added).[4] Case authorities addressing federal arbitration policy dictate the same. *See Rent-A-Ctr.,* 561 U.S. at 67 ("FAA . . . places arbitration agreements on an equal footing with other contracts, . . . and requires *courts* to enforce them according to their *terms* . . . .") (emphasis added); *Will-Drill Resources, Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("arbitration . . . cannot be forced upon a party absent its consent.").

The AAA (initially) and now the Arbitration Claimants (opportunistically), nevertheless propose to proceed with arbitration other than "in the manner provided for in such agreement." It consequentially is sophistry for the Arbitration Claimants to conscript legal principles addressing "gateway" concepts such as scope, to undo the more fundamental condition no person can be forced, in the first instance, to arbitrate under terms to which they did not agree. Particularly because the agreements at issue here *do* "make[] . . . provision respecting arbitral costs . . . ." *Cf. Dealer Computer Servs., Inc.*, 588 F.3d at 888, n.3.

---

[3] The distinction between the two step analysis is not always clear in case authorities. Priority respectfully submits the following discussion of Fifth Circuit authority reflects a dispute such as this—regarding terms that operate as preconditions to arbitrate—is not a "first step" consideration, but a question of federal arbitration policy under step two.

[4] The Employment Agreements even incorporate by reference "the Federal Arbitration Act" as a precondition.

4

However "fine" a distinction this may appear to necessitate regarding gateway issues, versus the more fundamental question whether the parties reached an agreement of any kind, *cf*. 352 F.3d at 219; it is a distinction the Fifth Circuit mandated in *Will-Drill Resources, Inc.*:

> We reject the argument that where there is a signed document containing an arbitration clause which the parties *do not dispute they signed*, we must *presume* that there is a valid contract and send any general attacks on the agreement to the arbitrator. . . . We . . . conclude that where a party attacks *the very existence* of an agreement, as opposed to its continued validity or enforcement, the <u>courts</u> must first resolve that dispute.

352 F.3d at 218 – 19 (emphasis added).

Here, the Employment Agreements unequivocally provide the "parties shall *split* all costs of arbitration . . ." and empower the arbitrator to re-adjust that apportionment only "in the award." The Arbitration Claimants contend these conditions should be read out of the agreement entirely or construed contrary to plain meaning.[5] In either respect, the Fifth Circuit treats this as an issue of contract formation for a court—not an arbitrator—to resolve. *Cf. id*. ("If A were to send an unsigned proposal containing an arbitration clause to B, offering to buy Blackacre . . ., and B were to sign the proposal after striking Blackacre and substituting Whiteacre, *no agreement was reached*. It could be said that A and B were both *willing to arbitrate*, but A was willing to arbitrate the purchase of Blackacre, while B was willing to arbitrate the sale of Whiteacre. . . . [A] *court* must first decide if an agreement exists . . . .") (emphasis added).

Priority's Motion to Enforce the Arbitration Agreements as Written or Vacate Order Compelling Arbitration therefore should be granted.

---

[5] Unless the term "split" is construed to mean split equally, the remaining language in the arbitration provision regarding "reapportionment" of costs would be surplusage. But for the initial split having to be made in equal proportions, there would be no reason for inclusion of the reapportionment language. *See also Matter of Brady v Williams Capital Group*, 14 N.Y.3d 459, 462 (N.Y. 2010) (treating the term "share" as equivalent in meaning to "equal share," i.e., "At the time the Arbitration Agreement was entered into, its '*equal share*' provision was consistent with . . . AAA . . . rules (which provided that parties . . . would *share* the cost . . .).") (emphasis added).

DATED: April 14, 2017.

Respectfully submitted,

By:   */s/ Daniel D. Pipitone*
     **Daniel D. Pipitone**
     Texas Bar No. 16024600
     SD Texas Bar No. 294
     MUNSCH HARDT KOPF & HARR, PC
     700 Milam Street, Suite 2700
     Houston, Texas 77002
     Tel: (713) 222-4060
     Fax: (713) 222-5813
     dpipitone@munsch.com

     **ATTORNEY-IN-CHARGE FOR DEFENDANTS**

**OF COUNSEL:**
MUNSCH HART KOPF & HARR, PC
700 Milam Street, Suite 2700
Houston, Texas 77002

**Michael A. Harvey**
Texas Bar No. 24058352
SD Texas Bar No. 917759
Tel: (713) 222-4015
Fax: (713) 222-5835
mharvey@munsch.com

**Brenna L. Hill**
Houston, Texas 77002
Texas Bar No. 24058352
SD Texas Bar No. 917759
Tel: (713) 222-4068
Fax: (713) 222-1475
bhill@munsch.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by means of ECF this 14th day of April 2017:

**JOSEPHSON DUNLAP LAW FIRM**
Michael A. Josephson
Andrew W. Dunlap
Lindsay R. Itkin
Jessica M. Bresler
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com
jbresler@mybackwages.com

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**MANN, TINDEL & THOMPSON**
Andy Tindel
112 E Line, Suite 304
Tyler, Texas 75702
903-596-0900 - Telephone
9030596-0909 - Facsimile
atindel@andytindel.com

                                                        */s/ Daniel D. Pipitone*
                                                        Daniel D. Pipitone