UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STEVEN MATTHEWS, individually and on behalf of others similarly situated, § § § | |
| v. § | Civil Action No. 6:15-cv-448-RWS-KNM |
| § | |
| PRIORITY ENERGY SERVICES, LLC, § et al. § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants', Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC (collectively, "Defendants"), Motion to Enforce Arbitration Agreement as Written or to Vacate Order Compelling Arbitration ("the Motion"). Doc. No. 110.[1] The Non-Party Claimants ("Arbitration Claimants") filed a response in opposition to the Motion. Doc. No. 115. Finally, Defendants filed a Reply in support of the Motion. Doc. No. 118. The Court held a hearing on the Motion on July 10, 2017. Having considered the parties' arguments and the applicable law, the Court recommends that the Motion be **DENIED**.

**BACKGROUND**

In this Fair Labor Standards Act case, Steven Matthews, and other similarly situated employees, allege that Defendants subjected them to an unlawful pay policy by denying overtime. *See generally* Doc. No. 61. Certain employees signed an employment contract, which contained an arbitration provision (the "Arbitration Agreement"). On September 14, 2016, the Court issued a report that recommended Defendants' Motion to Compel, Doc. No. 54, be granted and the

---

[1] Additionally, before the Court are Defendant's Unopposed Motion for Oral Argument, Doc. No. 121, Defendant's Motion to Expedite Hearing and Disposition of Motion to Enforce or to Vacate Order, Doc. No. 123, and Defendant's Oral Motion to Stay the Arbitration Proceedings. The court held a hearing on the Motion and thus the Motion for Oral Argument is hereby **GRANTED**. Further, the Motion to Expedite and the Motion to Stay are **DENIED as moot**.

1

plaintiffs that signed the Arbitration Agreement be dismissed from the case. Doc. No. 76. That report was adopted on January 3, 2017. Doc. No. 83.

> The Arbitration Agreement that the parties entered into states:
>
> I agree that any claims or disputes of any sort whether arising in the past, present or future between the Company and me and/or Company's employees, directors, parents, subsidiaries, affiliates, agents or representative (collectively "Company Parties") arising in any way from this Agreement or my employment with the Company shall be resolved exclusively though binding arbitration under the Federal Arbitration Act and the pertinent American Arbitration Association Rules in effect at that time. Any such claims or disputes must be arbitrated on an individual basis, and neither you nor the Company Parties may proceed with any such claims or disputes as a class representative or participant in a class or collective action, or in combination with any other person or entity's claims or disputes. The arbitrator shall issue a reasoned award and shall not award relief in a form or amount that exceeds that available under applicable law. The parties shall split all costs of arbitration, subject to the ability of the arbitrator to reapportion costs of arbitration, attorneys' fees and expert witness fees in the award.

Doc. No. 54 Ex. A. Based on the documents submitted in the case, the American Arbitration Association ("AAA") decided to use the employer-promulgated plan from the fee schedule contained in the AAA Rules in effect at the time the dispute arose ("AAA Employment Rules"). This plan places a majority of the expenses on the employer as opposed to the employee. According to Defendants, this is contrary to the agreement which states the "parties shall split all costs of arbitration."

## APPLICABLE LAW

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Arbitration agreements are placed "on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (citing *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440,

2

444–45 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The FAA also creates a strong federal policy that favors arbitration and any doubts about an arbitration agreement's scope should be resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66 (1995).

**ANALYSIS**

Defendants ask the Court to vacate the Order compelling arbitration or, in the alternative, enforce the Arbitration Agreement as it is written.[2] Defendants bring the Motion under Section 4 of the Federal Arbitration Act. However, the Court has very limited jurisdiction to intervene in the arbitration process before an award is issued. *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002). The Court's ability to intervene is limited to the decision of "whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred." *Id.* at 487.

Defendants argue that the Court has the ability to intervene because, after the Court granted Defendants' Motion to Compel, they realized that the parties never had a valid arbitration agreement because there was no meeting of the minds regarding the arbitration payment term. Defendants use a hypothetical from *Will-Drill Resources* to explain their contention:

> If A were to send an unsigned proposal containing an arbitration clause to B, offering to buy Blackacre for $100,000, and B were to sign the proposal after striking Blackacre and substituting Whiteacre, no agreement was reached. It could be said that A and B were both willing to arbitrate, but A was willing to arbitrate the purchase of Blackacre, while B was willing to arbitrate the sale of Whiteacre.

Doc. No. 118 (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003)). Defendants argue that in this hypothetical the parties never formed a valid contract. Defendants

---

[2]At the hearing, Defendants clarified that they primarily ask the Court to vacate the Order compelling arbitration and, in the alternative, seek to enforce the arbitration agreement as written.

maintain that this hypothetical is similar to the current case because Defendants contend that they only intended to arbitrate if the parties split all costs of arbitration evenly. On the other hand, Defendants assert that the Arbitration Claimants only intended to arbitrate in some fashion contrary to splitting the costs evenly. Accordingly, Defendants assert that the parties never had a meeting of the minds or mutually assented to the preconditions of arbitration. As such, Defendants maintain that under Fifth Circuit law, it is clear that the parties never actually formed a valid agreement to arbitrate.

However, the *Will-Drill Resources* hypothetical is different from the situation presented here. In the *Will-Drill Resources* hypothetical, A drafted a proposal offering to buy Blackacre, and B changed the terms when it received the proposal, creating a counter-offer to sell Whiteacre. *Will-Drill Res.*, 352 F.3d at 219. B then signed the new offer before A accepted it. *Id.* Accordingly, the parties did not have a valid offer and acceptance or a meeting of the minds with respect to the contract. *See id.* Here, Defendants drafted an employment contract containing an arbitration provision and gave it to the Arbitration Claimants. The Arbitration Claimants made no changes and signed the contract as Defendants drafted it. Accordingly, the comparison to the *Will-Drill Resources* hypothetical is misplaced.

While Defendants argue that this is an issue of contract formation, they provide no case law on the basic principles of contract formation.[3] Indeed, case law suggests that, "[t]he determination of a meeting of the minds is based on the objective standard of what the parties said

---

[3] After the hearing, Defendants submitted additional authorities. Doc. No. 127. This submission was untimely as it came after full briefing on the motion and oral argument on the motion and without leave of court. However, after reviewing the additional authorities, the case law Defendants submitted on contract formation is scant. Defendants merely provided case law that stated "[t]o establish contract formation, a party must prove 'an offer and acceptance and a meeting of the minds on *all* essential terms." Doc. No. 127 (quoting *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App.—Dallas 2012, pet denied)). However, Defendants made no argument as to what the essential terms of the agreement are, and failed to provide any case law that demonstrated how the Court determines if there has been a meeting of the minds.

and did, not on their subjective intent." *Parker Drilling Co. v. Romfor Supply Co.*, 361 S.W.3d 68, 76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). "In determining whether mutual assent is present, courts consider the communications between the parties, the acts and circumstances surrounding the communications, and any course of dealing between the parties." *Id.* (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). "[A] party manifests its assent by signing an agreement." *Palavan v. McCulley*, 498 S.W.3d 134, 141 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013)).

This contract principle helps further demonstrate why the *Will-Drill Resources* hypothetical is entirely different from the facts presented in this case. In the *Will-Drill Resources* hypothetical, B objectively changed the terms of the contract. Here, both parties signed the employment contract (as it was drafted by Defendants), which manifested their assent to the contract. *Palavan*, 498 S.W.3d at 141 (citing *Rachal*, 403 S.W.3d at 845). According, to the objective actions of the parties, there was an offer, acceptance, and mutual assent to the terms of the contract. *See Parker Drilling*, 361 S.W.3d at 278. Defendants have not presented any other objective conduct that would suggest that the parties did not mutually assent to the terms of the agreement. Accordingly, both parties mutually assented to the terms of the Arbitration Agreement.

While the subjective intent about the fee splitting provision is not relevant to the formation of the contract, it does create a dispute about the interpretation of the Arbitration Agreement. However, there is an entire body of case law surrounding contract interpretation, which resolves disputes about the meaning of the contract terms, but does not invalidate the contract. *See, e.g.*, *Palavan*, 498 S.W.3d at 141. Accordingly, the Court recommends that Defendants' request to

5

vacate the Court's previous order compelling arbitration because there was never a valid agreement to arbitrate be denied.

Defendants contend that if the Court determines the parties did have a meeting of the minds as to the Arbitration Agreement, then the Court must enforce the terms of the Arbitration Agreement as they are written. Defendants maintain that the Court has authority to intervene in the arbitration proceedings under Section 4 of the FAA because parties can only be forced to arbitrate under the terms stated in the arbitration agreement. However, looking to the terms of the Arbitration Agreement the current dispute is for the arbitrator to decide.

The terms of the Arbitration Agreement as they are written include a provision that states the parties shall split costs of the arbitration. Doc. No. 54 Ex. A. However, the Arbitration Agreement also incorporates by reference the AAA Employment Rules. *Id.* Ex. A. The AAA Employment Rules have a fee schedule for arbitrations that take place in the employment context. *See generally* Doc. No. 110 Ex. E.

The AAA Employment Rules give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Employment Arbitration Rules and Mediation Procedures at Rule 6(a)–(b). The AAA Employment Rules also address how to resolve disputes between arbitration agreements and the AAA Employment Rules. Under the AAA Employment Rules, "[i]f a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules." Employment Arbitration Rules and Mediation Procedures at Rule 1. According to the terms of the Arbitration Agreement as written, the arbitrator is to resolve the dispute. The fact that parties have a disagreement about the interpretation of the terms of the Arbitration Agreement "does not change the fact that at some point in time, the parties

reached an agreement, and that agreement included the decision to arbitrate disputes arising out of the agreement." *Will-Drill Resources*, 352 F.3d at 218.

## RECOMMENDATION

Accordingly, the Court recommends that Defendant's Motion to Enforce Arbitration Agreement as Written or Vacate the Order Compelling Arbitration, Doc. No. 110, be **DENIED**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 14th day of July, 2017.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

7