UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STEVEN MATTHEWS, Individually and on behalf of other employees similarly situated | § § § § | No. 6:15-cv-00448-MHS |
| Plaintiff(s) | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| PRIORITY ENERGY SERVICES, LLC, et al. | § § § | |
| Defendant. | § § § § | FLSA COLLECTIVE ACTION |

## DEFENDANTS' OBJECTIONS TO REPORT & RECOMMENDATION

TO THE HONORABLE COURT:

Defendants Priority Well Testing, LLC and Priority Coiled Tubing, LLC (collectively "Priority") hereby object to the Magistrate Judge's July 14, 2017 Report and Recommendation (the "Recommendation") proposing denial of Priority's Motion to Enforce Arbitration Agreements as Written or to Vacate Order Compelling Arbitration (Doc. 128). The Recommendation contravenes controlling legal principles by delegating matters reserved to the Court, regarding a contractual condition that qualified the Parties willingness to arbitrate on the requirement they "shall split all costs . . ." of arbitration.[1]

---

[1] The Recommendation was issued on July 14, 2017, and this case was stayed on July 24, 2017 (Doc. 132), with four remaining days before objections to the Recommendation would have been due. *See* FED. R. CIV. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The stay was extended until Monday, September 11, 2017. (Doc. 134). Priority therefore understood the four outstanding days to file objections would re-start upon reinstatement of the case—which in particular became necessary given the disruption counsel have been required to manage due to hurricane Harvey. By separate submission, Priority will comply with a September 12, 2017 Order from the Court (Doc. 135) pertinent to these timing considerations.

## I. OBJECTIONS

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, a dispute can be referred to arbitration only if a federal court first determines an arbitration agreement has been "formed"—and then only in accordance with the "terms" of such an agreement  An arbitrator may not, in the first instance, resolve the formation question, or conditions for referral—because an arbitrator's power to act derives from the lawfulness of a referral. *Cf. Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) ("where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed.  Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue.  A presumption that a signed document represents an agreement could lead to this untenable result.") (emphasis in original).

Here, the Recommendation nonetheless delegates power to the American Arbitration Association ("AAA") to resolve a dispute regarding an expressly articulated contractual term regarding arbitration cost allocation, which was to operate as a *pre*condition to agreement formation.  Only two sets of principles alternatively could apply to resolve this dispute—both of which can be applied only by this Court.

First, principles of contractual formation could apply to resolve whether Priority and Plaintiffs ever in fact formed an agreement to arbitrate, whereby they must have had a meeting of the minds on the cost allocation term *they* purported to treat as essential by including the term in the agreements.  *Cf. Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) ("To establish contract formation, a party must prove 'an offer and acceptance and a meeting of the minds on *all* essential

terms.'") (quoting *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App.— Dallas 2012, pet. denied)) (emphasis added).

In *Will-Drill Res., Inc.*, the United States Court of Appeals for the Fifth Circuit made clear only a federal court (not an arbitrator) can resolve a formation dispute of this kind. *Cf.* 352 F.3d at 219 ("We . . . conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts *must* first resolve that dispute.") (emphasis added).[2]

Alternatively, if an agreement to arbitrate indeed was formed (as Priority initially had believed (Doc. 54), but Plaintiffs since have disavowed by refusing to adhere to the cost-splitting term), the FAA mandates the Court should compel arbitration in accordance with the "terms" actually articulated therein. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or *refusal* of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . *for an order* directing that such arbitration proceed in the manner provided for <u>in</u> such agreement.") (emphasis added). *See also* 9 U.S.C. § 3 ("If any suit . . . brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing . . ., the court . . . upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been had in *accordance with the <u>terms</u> of the agreement* . . . .") (emphasis added).

---

[2] Whether an arbitration agreement was "formed" (the issue here) is independent of "scope" or "validity" concerns. *See, e.g., Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, n.2 (2010) ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties []*was ever concluded* . . . .") (emphasis added). For that reason, this dispute is not covered by FAA principles that favor arbitration even when there may be doubt regarding the scope or validity of an agreement—because those principles assume there indeed is *an* agreement. *Cf.* (Doc. 128, Page 3 of 7).

Here, the terms of the Parties' respective agreements unambiguously dictate they "shall split all costs of arbitration." (Doc. 128, Page 2 of 7). There is no grant of authority for the AAA to deviate from those court-enforceable terms. Indeed, if Plaintiffs persistent that they purportedly intended the referenced language to mean anything other than what it says—they necessarily have conceded a "formation" defect as discussed above.

In either case, this Court exclusively is empowered to resolve this dispute by compelling Plaintiffs to "proceed in the manner provided for in such agreement" or by finding there simply was no mutual assent upon which the arbitration could be justified. The Magistrate Judge's Recommendation eschewed both alternatives—instead deferring to the AAA to impose cost-allocation terms not expressed in the putative agreements and which are contrary to the stated mandate to "spilt all costs of arbitration." *Cf.* (Doc. 125-3) (reflecting to date the AAA has shifted all costs to Priority—contrary to the contractual mandate all costs must be split).

The Recommendation therefore constitutes legal error.

## II. THE MAGISTRATE'S BASES FOR THE RECOMMENDATION

The Magistrate Judge stated four bases for the Recommendation: (1) the Court has very limited jurisdiction to intervene in the arbitration process before an award is issued; (2) the Fifth Circuit's holding in *Will-Drill Res., Inc.* does not establish intervention is proper here; (3) if indeed this matter qualifies as a formation dispute, it must be resolved with reference to "the objective standard of what the parties said"; and (4) any tension in the agreements regarding cost allocation purportedly is for the arbitrators to decide. (Doc. 128, Pages 3 of 7 – 7 of 7).

Priority respectfully submits the conclusions articulated in the Recommendation do not follow from the otherwise accurate principles of law discussed therein. The holding in *Will-Drill*

*Res., Inc.* dictates a formation dispute prohibits a court from deferring to the arbitration process. The Magistrate Judge held that principle was inappropriate here, based on a perceived distinction regarding a "hypothetical" used in the case.

In *Will-Drill Res., Inc.*, the Fifth Circuit differentiated between disputes regarding validity or enforceability of arbitration agreements (which perhaps may be referable to arbitration), versus formation disputes (which may not), by using the following hypothetical:

> If A were to send an unsigned proposal containing an arbitration clause to B, offering to buy Blackacre . . ., and B were to sign the proposal after striking Blackacre and substituting Whiteacre, *no agreement was reached*. It could be said that A and B were both willing to arbitrate, but A was willing to arbitrate the purchase of Blackacre, while B was willing to arbitrate the sale of Whiteacre. . . . [*A*] *court must first decide if an agreement exists* . . . ."

352 F.3d at 218 – 19 (emphasis added).

The Fifth Circuit did not imply the foregoing fact pattern represents the exclusive context in which a formation dispute may arise—nor was the hypothetical offered for that purpose. The Court instead illustrated notwithstanding what intuition may suggest regarding the effect of a written *and* signed document, that intuition cannot answer the question whether a referral to arbitration is lawful: "We reject the argument that where there is a signed document containing an arbitration clause which the parties do not dispute they signed, we must presume that there is a valid contract and send any general attacks on the agreement to the arbitrator." *Id*.

The circumstances whereby the formation dispute arose here may differ from the hypothetical used in *Will-Drill Res., Inc.* (*cf.* Doc. 128, Page 5 of 7), but these circumstances nonetheless are paradigmatic of a formation dispute *if* Plaintiffs are allowed to persist with their assertion they had no intent to split all arbitration costs—although the arbitration agreements state precisely that.    Indeed, Priority never has resisted the principle referenced in the

Recommendation, that "the objective standard of what the parties said" is the proper measure for resolving this matter.

Priority in fact has been emphatic that by using that measure, the Parties indeed should be directed to "spilt all costs of arbitration" as mandated in their agreements. Plaintiffs nonetheless have refused to do so, the AAA in turn has read those terms out of the agreements entirely, and the Magistrate Judge has recommended this Court deem itself powerless to intervene. Priority respectfully submits the Magistrate Judge erred as a matter of law by recommending this outcome.

### III.     PRESERVATION OF ERRORS

Priority preserved the grounds for the foregoing objections in the following submissions, which are incorporated as if fully set forth herein: Docs. 110, 118, 123, 125.[3]

### IV.     CONCLUSION

WHEREFORE, Defendants Priority Well Testing, LLC and Priority Coiled Tubing, LLC respectfully request this Court reject the July 14, 2017 Report and Recommendation proposing denial of Priority's Motion to Enforce Arbitration Agreements as Written or to Vacate Order Compelling Arbitration, and modify the ruling either to enforce the arbitration terms to "split all costs" or vacate the referrals to arbitration for lack of mutual assent regarding arbitration cost allocation. Defendants further request all other relief to which they may be entitled.

---

[3] During a hearing on Priority's Motion to Enforce Arbitration Agreements as Written or to Vacate Order Compelling Arbitration, Plaintiffs for the first time cited *Williams v. Omainsky*, No. 15-0123-WS-N, 2015 WL 8056142 (S.D. Ala. Dec. 3, 2015, which it had not before mentioned or briefed. (Doc. 130, 21:15 – 22:14 & 22:20 – 23:5). Priority submitted a post-hearing response to the case, and otherwise provided the Court with citations for authorities Priority addressed at the hearing. Priority did not otherwise assert legal arguments that had not previously been raised and preserved. *Cf.* (Doc. 128, Page 4 of 7).

DATED:  September 15, 2017.

                Respectfully submitted,

By: /s/ *Daniel D. Pipitone*
**Daniel D. Pipitone**
Texas Bar No. 16024600
SD Texas Bar No. 294
Munsch Hardt Kopf & Harr, PC
700 Milam Street, Suite 2700
Houston, Texas 77002
Tel:  (713) 222-4060
Fax:  (713) 222-5813
dpipitone@munsch.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

**OF COUNSEL:**

Munsch Hart Kopf & Harr, PC
700 Milam Street, Suite 2700
Houston, Texas 77002

Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201

**Michael A. Harvey**
Texas Bar No. 24058352
Tel: (713) 222-4015
Fax: (713) 222-5835
mharvey@munsch.com

**Nolan C. Knight**
Texas Bar No. 24027125
Tel:  (214) 855-7500
Fax:  (214) 855-7584
nknight@munsch.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by means of ECF this 15th day of September 2017:

**JOSEPHSON DUNLAP LAW FIRM**
Michael A. Josephson
Andrew W. Dunlap
Lindsay R. Itkin
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-7100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**MANN, TINDEL & THOMPSON**
Andy Tindel
112 E Line, Suite 304
Tyler, Texas 75702
903-596-0900 - Telephone
9030596-0909 - Facsimile
atindel@andytindel.com

/s/ *Daniel D. Pipitone*